United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SERGIO IVAN CHAPARRO AYALA,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No. 26-cv-09430-CRB

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 26-cv-09430

Petitioner Sergio Ivan Chaparro Ayala is currently detained by federal immigration agents. Pet. (dkt. 1) ¶ 1. Mr. Ayala argues that his detention violates the Due Process Clause of the Fifth Amendment and now seeks immediate relief. Mem. in Supp. of Mot. for TRO ("TRO Mem.") (dkt. 5-1) at 7. He requests the Court issue a temporary restraining order ("TRO") requiring his immediate release from custody and enjoining Respondents from re-arresting him before he can contest his detention before a neutral tribunal. Id. He also asks the Court to prohibit his transfer outside of this district during these proceedings. Id. This Court now grants his requests.

## I. BACKGROUND

Mr. Ayala is a citizen and national of Mexico. Resp't's Resp. to Mot. for TRO ("TRO Resp.") (dkt. 6) at 1. He was admitted to the United States on August 22, 2019, as a tourist. Id. Although the parties disagree about the date when Mr. Ayala's permission to remain in the country expired, see TRO Mem. at 7; TRO Resp. at 1, both agree that in 2020 Mr. Ayala remained in the United States past that date and has resided here ever since. TRO Mem. at 8; TRO Resp. at 1. In the intervening years, Mr. Ayala has stayed in the San Francisco Bay Area, where he has a partner, works at a local restaurant, financially supports two children, and holds "strong community relationships." Pet. ¶¶ 47–50.

On August 28, 2026, Mr. Ayala and his partner were at Oakland International Airport for a domestic flight to Las Vegas when he was detained by U.S. Immigration and Customs Enforcement ("ICE") agents. Id. at ¶¶ 7, 59. ICE placed Mr. Ayala into removal proceedings under 8 U.S.C. § 1227(a)(1)(B) that same day. TRO Resp. at 2. Mr. Ayala's status as a community member was significant enough that his arrest generated local press coverage. See TRO Mem. at 8.

Mr. Ayala remains in detention. Pet. ¶ 1. He suffers from several health conditions that make his continued detention potentially dangerous—most prominently, severe sleep apnea that Mr. Ayala treats with a CPAP machine at night. Id. ¶ 15. Without treatment, Mr. Ayala risks heart attack. Id. ¶ 52.

Mr. Ayala filed a petition for a writ of habeas corpus on September 2, 2026, raising claims under the Fifth Amendment and conditional claims under the Fourth Amendment and the Administrative Procedure Act. Id. He filed his motion for a TRO the same day, seeking relief from this Court based on the alleged violations of his Fifth Amendment Due Process rights. TRO Mem. Respondents filed their response on September 2, 2026. TRO Resp.

## II. LEGAL STANDARD

A party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Washington v. Trump, 847 F.3d 1151, 1159 n. 3 (9th Cir. 2017). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." Friends of the Wild Swan v. Weber, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." Nken v. Holder, 556 U.S. 418, 435 (2009).

United States District Court
Northern District of California

Courts issue TROs to preserve the status quo and prevent irreparable harm "just so long as is necessary to hold a [preliminary injunction] hearing and not longer." E. Bay Sanctuary Covenant v. Trump, 932 F.3d 742, 779 (9th Cir. 2018) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439 (1979)).

## III. DISCUSSION

Mr. Ayala has satisfied the requirements for a TRO.

### A. Likely Success on the Merits

Mr. Ayala is likely to succeed in demonstrating that his detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment, or at minimum to show that it presents a serious question going to the merits. "The Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

#### 1. Procedural Due Process

Mr. Ayala is likely to succeed on his procedural due process claim.

This Court has already concluded that the three-part test of Mathews v. Eldridge, 424 U.S. 319, 335 (1976), applies in the immigration detention context. Y.M.C.P. v. Alberran, No. 26-cv-08341-CRB, 2026 WL 2497562, at *3 (N.D. Cal. Aug. 25, 2026); see also Claros v. Albarran, 811 F. Supp. 3d 1062, 1066 (N.D. Cal. 2025) (collecting similar cases). Mathews requires consideration of (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at 335.

##### a. Private Interest

When immigrants are detained by the government and then released conditionally, they have a liberty interest arising from the "implicit promise" of that release. Garro Pinchi v. Noem, 792 F. Supp 3d 1025, 1032 (N.D. Cal. 2025) (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1973)). That is so even when the initial decision to release an individual results from the exercise of discretion. Cordero Pelico v. Kaiser, 25-cv-07286-

EMC, 2025 WL 2822876, at *6 (N.D. Cal. Oct. 3, 2025)) (citing Calderon v. Kaiser, No. 25-cv-6695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025)). Non-citizens detained at ICE check-ins after their initial release are subject to 8 U.S.C. § 1226(a), which allows for the exercise of discretion. See Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026); 8 U.S.C. § 1226(a) ("the Attorney General (1) may continue to detain the arrested alien; and (2) may release the alien on . . . conditional parole."). And still, "a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Cordero Pelico, 2025 WL 2822876, at *6.

But Mr. Ayala was never conditionally released by the government because Mr. Ayala was never before detained by them. TRO Resp. at 7. Respondents argue that without a former detention, the implicit promise of release does not exist and there is no liberty interest at stake in detaining Mr. Ayala for a first time. Id. at 7–8. This argument oversimplifies Mr. Ayala's Due Process rights. When the government makes "a decision not to detain [someone] in the first place," that decision can create "the same liberty interest in [that person's] continued freedom as an individual initially detained." Kharitonova v. Albarran, 26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026); see Jambwa v. Warden of the Desert View Annex Det. Facility, 26-cv-04357-PD, 2026 WL 2449550, at *1–*2 (C.D. Cal. Aug. 20, 2026) (finding that "Petitioner acquired a liberty interest because the government implicitly acquiesced to his continued release when it did not detain him after his visa expired and instead granted him employment authorization while his asylum claim was pending" and collecting similar cases); Norberto C.M. v. Warden, Cent. Valley Annex, 26-cv-04674-MWJS, 2026 WL 1992747, at *4 (E.D. Cal. July 9, 2026) (same). This is particularly true where an individual forms the "attachments of normal life" while residing in the country for many years. See Morrissey, 408 U.S. at 482; see also Kharitonova, 2026 WL 531441, at *3 (noting the length of a petitioner's residency in the United States in assessing the strength of their liberty interest). "Courts have recognized that, with the passage of time, a protectable liberty interest can 'crystallize[].'" Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025)

(quoting Hurd v. D.C., Gov't, 864 F.3d 671, 683–84 (D.C. Cir. 2017)).[1] Mr. Ayala has formed such attachments. See Pet. ¶ 47 ("Petitioner settled into life in the United States [and has] . . . establish[ed] strong family and community ties in the San Franscisco Bay Area."); id. ¶ 48 (Petitioner "lived with, cared for and supported his partner and minor children in the United States"); id. (Petitioner's "12- and 14-year old children[] rely on Petitioner for financial support"); id. ¶ 49 (Petitioner "was working at a local restaurant and had recently been promoted to shift supervisor"); TRO Mem. at 8 ("[R]egular customers of the restaurant [where Petitioner works] noted his absence immediately.").

Mr. Ayala thus has a significant liberty interest in his continued freedom.

**b. Risk of Erroneous Deprivation**

"Once a liberty interest is established, the question is whether process—a hearing—would lessen the risk of an erroneous detention." Claros, 811 F. Supp. 3d at 1069. Of course it would. "'[T]he risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" See Singh v. Andrews, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025) (quoting A.E. v. Andrews, 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)). That is because without a pre-deprivation hearing—"one of the most basic due process protections"—"neither party will have had an opportunity to determine whether there is any valid basis for the petitioner's detention." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025).

Civil immigration detention is "nonpunitive," Zadvydas, 553 U.S. at 690, and thus detention prior to a removal proceeding is only justified where immigrants "pose [1] flight risks or [2] dangers to the community," Rodriguez Vazquez, 183 F.4th at 1165. There is

---

[1] Contrary to Respondents' arguments, granting Mr. Ayala's motion will not provide "every alien unlawfully present in the United States [with the same] protected liberty interest." TRO Resp. at 8. Other courts have already granted similar relief without any such effects. See, e.g., Kharitonova, 2026 WL 531441, at *2. Further, the Court here does nothing more than what the Mathews test requires: it considers the private interest of the party affected by looking at the context of their deprivation. 424 U.S. at 334 ("Due process is flexible and calls for such procedural protections as the particular situation demands." (quoting Morrissey, 408 U.S. at 471)). Similar contexts may lead to similar results elsewhere. Dissimilar ones may not.

little to suggest Mr. Ayala is either. Where an individual has "substantial ties to the community," concerns that they will flee are "mitigated." Harrington v. Albarran, 26-cv-01889-JST, 2026 WL 800113, at *1 (N.D. Cal. Mar. 23, 2026) (citing the IJ findings); see Rodriguez v. Hernandez, 26-cv-02076-TL, 2026 WL 2432725, at *5 (W.D. Wash. Aug. 6, 2026) (collecting cases finding that "where a Petitioner has a minor child who is a citizen of the United States, other family members in the area, steady employment, and community connections, they are not a flight risk"). Mr. Ayala checks every box: he has continuous and long-term residency in the area, sustained employment, local ties, and both minor children and a partner who live in the community. Pet. ¶¶ 47–50. Nor is Mr. Ayala a threat to the community. He has no criminal record, either in the United States or elsewhere. TRO Mem. at 7; see Chuquillanqui v. Kaiser, 25-cv-06320-TLT, 2025 WL 4110424, at *9 (N.D. Cal. Oct. 2, 2025) (noting a Petitioner had "no criminal history" in determining he is not a flight risk); G.S. v. Bostock, 25-cv-01255-JNW-TLF, 2025 WL 3014274, at *9 (W.D. Wash. Oct. 8, 2025) (same); L.M. v. Noem, 25-cv-02194-RFB-BNW, 2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026) (same). And Respondents make no substantive argument to the alternative. "Providing [Mr. Ayala] with a pre-detention hearing will help ensure any future detention is lawful." See A.F.A.M. v. Albarran, 25-cv-10492-AMO, 2025 WL 3752190, at *4 (N.D. Cal. Dec. 22, 2025).

In addition, the Court rejects Respondents' contention that Mr. Ayala need not get a pre-deprivation hearing, because a post-deprivation hearing will do. See TRO Resp. at 6 (relying on Rodriguez Diaz, 53 F.4th at 1196–97). Respondents' argument runs contra to the many cases where courts have found pre-deprivation hearings were necessary before an individual could be re-detained. See, e.g., M.R.R. v. Chestnut, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at *11 (E.D. Cal. Nov. 24, 2025) (holding that while "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," pre-deprivation hearings are more likely required where the alleged violation is minor); Guillermo M. R., 791 F. Supp. 3d at 1036 ("absent evidence of urgent conditions, a pre-deprivation hearing is required to satisfy due process"); Romero v.

United States District Court
Northern District of California

Kaiser, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[D]ue process requires a hearing before an IJ prior to re-detention."). The liberty interest here is no lesser. And the baseline standard in favor of hearings prior to a rights deprivation remains. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) ("the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); see also Garro Pinchi, 792 F. Supp. 3d at 1033 ("Each of the three Mathews factors supports Ms. Garro Pinchi's constitutional right to a hearing before a neutral decisionmaker prior to any future detention").

The risk of an erroneous deprivation without a pre-deprivation hearing is therefore high.

**c. Government Interest**

Courts must consider the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

As in Garro Pinchi, 792 F. Supp. 3d at 1036, there is "no countervailing government interest . . . that supports conducting a bond hearing only after [Mr. Ayala] has been detained, rather than in advance thereof." Respondents' present no explanation for why their "interests [in detaining Petitioner] must be satisfied immediately," far be it one that outweighs the risk of an ongoing and erroneous deprivation of constitutional rights. See E.A. T.-B v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). And a generalized interest in "preventing noncitizens from remaining in the United States in violation of the law" is "not threatened if a pre-deprivation hearing is required." Id. Where there is otherwise no recent or substantial change in circumstances justifying Petitioner's detention, the government's interest in an arrest "without a hearing is low." See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Meanwhile, the fiscal and administrative burdens of a pre-deprivation hearing are insignificant. See Garro Pinchi, 792 F. Supp. 3d at 1036 ("Nor can the government suggest that the cost of providing such protections would be fiscally or administratively onerous."); Singh, 2025

United States District Court
Northern District of California

WL 1918679, at *8 ("In immigration court, custody hearings are routine and impose a minimal cost.").

The government's interests here are minimal.

#### d. Conclusion as to Mathews Factors

The Mathews factors thus weigh in favor of Mr. Ayala, and he has shown a likelihood of success on his procedural due process claim.

### 2. Substantive Due Process

Mr. Ayala is also likely to succeed on his substantive due process claim. The reasons largely replicate those above.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The only two justifications for immigration detention are (1) "ensuring the appearance of aliens at future immigration proceedings" and (2) "[p]reventing danger to the community." Id. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). As already outlined, Mr. Ayala is likely to succeed in demonstrating that his individual circumstances have not "changed such that they now pose a flight risk or danger to the community." See Garro Pinchi, 813 F. Supp. 3d at 1036. His detention would therefore "lack a valid basis and violate [his] right to be free from impermissible government custody." See Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025).

## B. Other Winter Factors

Mr. Ayala has also demonstrated a likelihood of immediate, irreparable injury in the absence of temporary relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). The Ninth Circuit has

specifically recognized "the irreparable harm imposed on anyone subject to immigration detention." Id. at 995. For someone like Mr. Ayala, who risks heart attack when deprived treatment for his severe sleep apnea, these harms are only amplified by the "subpar medical . . . care in ICE detention facilities." See id. at 995. And Mr. Ayala's family, including his 12- and 14-year old daughter, also suffer from his absence. See Pet. ¶ 48; see also Hernandez, 872 F.3d at 995 (recognizing "collateral harms to children of detainees whose parents are detained.").

The balance of the equities and public interest, which merge in this case, also favor the granting of a TRO. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." Jorge M. F. v. Wilkinson, 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); see Melendres, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and beyond have concluded under similar circumstances, "the potential harm to [Mr. Ayala] is significant, while the potential harm to the government is minimal." Pablo Sequen v. Kaiser, 793 F. Supp. 3d 1114, 1120 (N.D. Cal. 2025). At most, the government faces a short delay in detaining Mr. Ayala if it ultimately demonstrates that his detention is appropriate. The government is also not "harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).

Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Mr. Ayala's] favor." Hernandez, 872 F.3d at 996 (quoting Lopez v. Heckler,

United States District Court
Northern District of California

713 F.2d 1432, 1437 (9th Cir. 1983)).[2]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for a TRO.

Respondents, and their officers, agents, employees, attorneys, and any person acting in concert with them, or at their behest, and who has knowledge of this Order are ORDERED to immediately release Petitioner from Respondents' custody, and are ENJOINED from detaining Petitioner without a pre-detention hearing before a neutral decisionmaker. Respondents are further ENJOINED from removing Petitioner from this district during the pendency of these habeas proceedings. Respondents shall provide a status report confirming Petitioner's release within one day.

There is no realistic likelihood of harm to Respondents from enjoining their conduct, and so Mr. Ayala need not give security under Rule 65(c) of the Federal Rules of Civil Procedure. See Jorgensen v. Cassiday, 320 F.3d 906, 919–20 (9th Cir. 2003); Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999).

The Court also treats Petitioner's current motion as a motion for preliminary injunction, and Respondents are ORDERED to reply to this motion by September 9, 2026. Petitioner may file a response to Respondents' reply by no later than September 11, 2026. The Court SETS a hearing on this matter for Tuesday, September 15, 2026, at 10:00 am.

**IT IS SO ORDERED.**

Dated: September 4, 2026

CHARLES R. BREYER
United States District Judge

[2] Respondents' remaining exhaustion argument is rejected, mainly because Due Process challenges are precisely "the sort of constitutional challenge that is 'beyond the competence of that [agency] to decide.'" See Norberto C.M., 2026 WL 1992747, at *4 (quoting Zamorano v. Garland, 2 F.4th 1213, 1224 (9th Cir. 2021)).